**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

VIRGINIA L. FOLEY, *et al.*,
       Plaintiffs

    v.

SYRIAN ARAB REPUBLIC, *et al.*,
       Defendants.

Civil Action No. 11-699 (CKK)

---

**MEMORANDUM OPINION**
(December 21, 2017)

This case arises from the deaths of three Americans—Laurence Michael Foley, Sr., Keith

Matthew Maupin and Kristian Menchaca—in Iraq and Jordan between 2002 and 2006.

Plaintiffs—the estates and family members of the deceased—allege that all three were killed by a

terrorist organization led by Abu Mus'ab al-Zarqawi (the "Zarqawi Terrorist Organization").

Proceeding under the Foreign Sovereign Immunities Act ("FSIA"), Plaintiffs allege that

Defendants Syrian Arab Republic ("Syria"), Syrian Military Intelligence, Syrian President

Bashar al-Assad and Syrian General Asif Shawkat, provided material support and resources to

the Zarqawi Terrorist Organization and accordingly should be held liable for these deaths. The

Court agrees.

Defendants have not answered or otherwise participated in this litigation, with the

exception of filing an opposition to a motion filed by Plaintiffs regarding the sufficiency of

service. The case accordingly proceeded in a default setting. The Court held a liability hearing

on November 16 and 17, 2016. In a previous Memorandum Opinion and Order, the Court

determined that Plaintiffs had established their claims by evidence satisfactory to the Court, and

accordingly granted default judgment against Defendants as to liability. The Court's findings of

fact and conclusions of law in that Memorandum Opinion and Order are incorporated into this

1

Memorandum Opinion as though stated in full.  The Court referred the issue of damages to a Special Master.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will now grant Plaintiffs default judgment in this case in full.  It will affirm and adopt the Special Master's findings and recommendations on damages, with the exception of his recommended award to Virginia Foley.  Mrs. Foley's award will be increased.

## I. BACKGROUND

Plaintiffs filed this lawsuit on April 8, 2011.  Compl., ECF No. 1.  An Amended Complaint was filed on September 13, 2011.  Am. Compl., ECF No. 11.  Plaintiffs then struggled for years to effectuate service because of the civil war in Syria and the attendant breakdown in diplomatic relations between that country and the United States.  On the Court's order, between November 2011 and February 2015 Plaintiffs filed a series of status reports updating the Court on their efforts to effectuate service on Defendants.  ECF Nos. 20-38, 44.  On April 23, 2015, Plaintiffs moved this Court for an order that service had been completed under 28 U.S.C. § 1603(a)(3).  ECF No. 48.  Defendant Syrian Arab Republic filed an opposition to this Motion, the only pleading filed by any Defendant in this matter.  ECF No. 49.  On January 21, 2016, the Court granted Plaintiffs' motion.  ECF No. 51 at 11.  The Court found that Plaintiffs had accomplished service and ordered the Clerk of the Court to enter a default as to each Defendant pursuant to Fed. R. Civ. P. 55(a).  *Id.*  The Clerk of the Court entered default on January 22, 2016.  ECF No. 52.

---

[1] The Court's consideration has focused on the Special Masters' damages reports, ECF Nos. 81-83, Plaintiffs' objections thereto, ECF No. 84, and the Special Masters' response to Plaintiffs' objections, ECF No. 86.  In an exercise of its discretion, and noting Plaintiffs' statement that they do not request a hearing on their objections, the Court finds that holding oral argument would not be of assistance in rendering a decision.  *See* LCvR 7(f).

The Court held a liability hearing on November 16 and 17, 2016, at which Plaintiffs offered documentary, photographic and video evidence, and presented the testimony of fact and expert witnesses. This hearing was limited to Defendants' liability—Plaintiffs were not required to present evidence of damages. At the close of the hearing Plaintiffs filed Proposed Findings of Fact and Conclusions of Law. ECF No. 71.

In a previous Memorandum Opinion and Order, the Court granted Plaintiffs' motion for default judgment against each Defendant as to liability. ECF Nos. 75, 76. The Court then appointed Alan Balaran as a Special Master to administer damages proceedings. ECF No. 75 at 1. The Court ordered Mr. Balaran to file a damages report for each Plaintiff. *Id.* at 2. The Court further ordered that any party could file an objection to Mr. Balaran's reports within 21 days of the filing on the public docket. *Id.* The Court further ordered that failure to meet this deadline would result in permanent waiver of objections to Mr. Balaran's findings, and that absent objection, Mr. Balaran's findings, reports and recommendations would be deemed approved, accepted and ordered by the Court, unless the Court provided otherwise. *Id.*

Special Master Balaran reviewed the record in this case upon which the Court based its liability findings, and also received additional evidence. On October 6, 2017, Special Master Balaran filed three reports: one regarding the death of Laurence Michael Foley, Sr., one regarding the death of Staff Sergeant Keith Matthew Maupin, and one regarding the death of Private First Class Kristian Menchaca. ECF Nos. 81, 82, 83. The recommendations of the Special Master are summarized below:

- ***Laurence Michael Foley, Sr.:*** The Special Master recommended that Laurence Foley Sr.'s estate receive compensatory damages for pain and suffering in the amount of $1 million and economic damages in the amount of $1,309,517. The Special Master also recommended that Virginia Foley be awarded $6,250,000 and that Megan Foley, Jeremie Foley Robenolt and Laurence Foley, Jr. each be awarded $3 million in compensatory damages for loss of solatium. The Special Master

recommended Plaintiffs not be granted prejudgment interest on their damages awards, and recommended that their damages not be increased to account for inflation.

- ***Staff Sergeant Keith Matthew Maupin:*** The Special Master recommended that that the estate of Keith Matthew Maupin receive $10 million in compensatory damages for pain and suffering and $1,087,294 in economic damages. The Special Master also recommended that Carolyn Maupin and Keith Maupin each receive $7 million in compensatory damages for loss of solatium. The Special Master recommended Plaintiffs not be granted prejudgment interest on their damages awards, and recommended that their damages not be increased to account for inflation.

- ***Private First Class Kristian Menchaca:*** The Special Master recommended that the estate of Kristian Menchaca receive $30 million in compensatory damages for pain and suffering and economic damages in the amount $2,382,658. The Special Master recommended that Christina Menchaca receive $17 million for loss of solatium, that Maria Vasquez receive $5 million for loss of solatium, that Pedro Menchaca receive $3.5 million for loss of solatium, and that Julio Menchaca receive $2.5 million for loss of solatium. The Special Master recommended no loss of solatium damages be granted to Julietta and Kenneth MacKenzie, Kristian's aunt and uncle, or Isaac Murillo, Kristian's "stepson." Finally, the Special Master recommended Plaintiffs not be granted prejudgment interest on their damages awards, and recommended that their damages not be increased to account for inflation.

Plaintiffs filed timely objections to Special Master Balaran's reports. Plaintiffs objected that the Special Master erred in the following ways:

- Departing without explanation from the most relevant precedent regarding a damage award for an individual tortured to death by AQI, which is *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53 (D.D.C. 2008).

- Under his own framework adopted from *Heiser I*, awarding damages to Virginia Foley as though she were a parent of Laurence Foley, Sr., and not his spouse.

- Issuing pain and suffering and solatium awards relying on a quantitative framework based upon 1998-2000 damages awards that has not been adjusted for the effects of inflation to match present day values.

- Failing to allow prejudgment interest damages, which are designed to make a claimant whole, despite language included in Plaintiffs' complaint requesting a remedy for all pecuniary losses.

Defendants filed no objections. On November 9, 2017, the Court ordered Special Master Balaran to consider Plaintiffs' objections and file a response to them. Mr. Balaran has now done so.

## II. DISCUSSION

The Court has already entered judgment in Plaintiffs' favor on liability. All that remains to determine is Plaintiffs' entitlement to damages. The Court referred that issue to the Special Master, who has filed detailed reports recommending damages awards. The Court will adopt and affirm Special Master Balaran's damages reports in all respects but one.

As an initial matter, in accordance with the Court's April 13, 2017 Order, ECF No. 75, all aspects of Mr. Balaran's reports about which no objections were filed are adopted and will be ordered. Next, with respect to Plaintiffs' objections to various aspects of those reports, the Court sustains Plaintiffs' objection to the award recommended by the Special Master for Virginia Foley. The Special Master concedes that this aspect of his recommendations was erroneous. However, the Court overrules the remainder of Plaintiffs' objections. Accordingly, with the exception of the alteration to Mrs. Foley's award, as described in further detail below, the Court adopts the Special Master's analysis and conclusions in their entirety. It incorporates that analysis and those conclusions into this Memorandum Opinion as though stated in full.

### A. Status of Virginia Foley

Plaintiffs argue that the Special Master erred by recommending a solatium award for Plaintiff Virginia Foley as though she were a parent of Laurence Foley Sr., when in fact she was his wife. The Special Master recommended awarding Mrs. Foley a $6.25 million solatium award, which represented the $5 million award generally granted to parents of a deceased child, *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006), plus a 25%

enhancement for the particular circumstances surrounding Mr. Foley's death. The court in *Heiser* noted that spouses of the deceased are often granted awards in the $8 to $12 million range. *Id.* Plaintiffs argue that Mrs. Foley's award should accordingly be increased to $15 million, representing a baseline award of $12 million, plus the 25% enhancement the Special Master already found warranted.

The Special Master concurs that the use of a $5 million baseline was an error, and has filed a supplemental report recommending that a $10 million baseline be used, and that Mrs. Foley be granted $12.5 million after the 25% enhancement is applied on account of the particular circumstances surrounding her husband's death.

The Court agrees that the Special Master erred by treating Mrs. Foley as Mr. Foley's parent, as opposed to his wife. The Court also finds no error in the Special Master's recommendation that Mrs. Foley be awarded solatium damages of $12.5 million. The Court will order that she be awarded that amount of solatium damages.

## B. Import of *Gates v. Syrian Arab Republic*

Next, Plaintiffs object to the Special Master's calculation of pain and suffering damages awarded to the estates of Plaintiffs Menchaca and Maupin. The basis of Plaintiffs' objection is that the awards are smaller than the awards granted in a similar case, *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53 (D.D.C. 2008). In *Gates*, two American contractors were kidnapped and beheaded by the Zarqawi Terrorist Organization. Plaintiffs in that case received pain and suffering awards of $50,000,000. In this case, Plaintiff Menchaca was subjected to various blunt force injuries, strangulation, and the removal of his eyes and tongue before his death. The Special Master awarded his estate $30,000,000. The facts surrounding Plaintiff Maupin's death are less certain, but the Court has determined that he was subjected to mental

and physical torture before being murdered by means involving the application of "significant force" to his jaw. The Special Master awarded his estate $10,000,000. Plaintiffs argue that the pain and suffering awards to Menchaca and Maupin's estates should both be increased to $50,000,000 to match that of the Plaintiffs in *Gates*.

Plaintiffs' objection has no merit. The Special Master carefully considered the facts, expert testimony and legal precedents in this case and came to conclusions about the damages to which each Plaintiff is warranted. There is no reason why the Plaintiffs in this case must receive the precise amount received by the Plaintiffs in *Gates*. Plaintiffs' suggestion that *Gates* is the only helpful precedent is simply not correct, as illustrated by Plaintiffs' and the Special Masters' citation to other roughly similar cases. Despite the fact that the same terrorist organization was involved in *Gates* and in this case, the facts of the two cases are different, and the Special Master carefully and reasonably determined the size of the award that would be appropriate for the particular facts of this case.[2] The Court has reviewed those determinations and agrees with them. Without in any way diminishing the great pain and suffering experienced by Staff Sergeant Maupin and Private First Class Menchaca, the Court will not adjust the pain and suffering awards recommended by the Special Master simply to make them align with the awards granted in a previous case.

## C. Inflation

Plaintiffs also claim that the Special Master erred by failing to grant Plaintiffs' request to adjust the recommended damage awards upward to account for inflation. Plaintiffs claim that the

---

[2] With respect to Plaintiffs' objection that the Special Master erred by refusing to conclude that the trauma to Staff Sergeant Maupin's jaw occurred while he was alive, the Court notes that the Special Master correctly determined that although the record indicated that the injury to Maupin's jaw occurred *at the time of* Plaintiff's death, it did not necessarily occur *before* his death.

Special Master based the amount of the awards he recommended on awards granted in other cases that are from a number of years ago. Plaintiffs argue that due to the effect of inflation, it is unfair to "mechanistically" apply the award amounts from these older cases to this case.

The Court overrules this objection to the Special Master's report. This objection is based on the assumption that the Special Master automatically applied the amount of damages given in past cases to this case, without considering how much Plaintiffs were entitled to in present-value currency. There is no basis for that assumption in the Special Master's reports or his recommended awards. Indeed, the Special Master specifically noted in his reports that he was not attempting to merely match prior awards, but was instead recommending awards based on "the unique circumstances in this case." ECF No. 81 at 37. The Special Master appears to have carefully crafted the awards in this case, and the Court agrees that they are appropriate as recommended. Plaintiffs' objection regarding inflation is rejected.

**D. Prejudgment Interest**

Finally, Plaintiffs claim that the Special Master erred by declining to grant them prejudgment interest. The Special Master denied Plaintiffs' request for prejudgment interest because Plaintiffs did not specify such interest as a form of relief they sought in their complaint. Plaintiffs argue that they implicitly requested such interest by demanding "pecuniary losses."

The Court overrules this objection as well. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiffs did not request prejudgment interest in their complaint, and accordingly the Special Master was correct to conclude that they cannot recover such interest as part of a default judgment. *See Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 103 n.7 (D.D.C. 2017) (refusing to grant plaintiff prejudgment interest in FSIA case where it was not requested in the complaint); *Cohen v. Islamic*

*Republic of Iran*, No. 12-CV-01496 (CRC), 2017 WL 3207693, at *3 n.2 (D.D.C. July 27, 2017) (refusing to grant plaintiffs prejudgment interest in FSIA case where it was not requested in the complaint). Prejudgment interest is a specific type of relief and, for Plaintiffs to have been able to collect that relief as part of a default judgment, it needed to be requested specifically. Requesting "pecuniary losses" in their complaint was not sufficient to put Defendants on notice that, if they defaulted, they might be subject to prejudgment interest. *See Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (affirming district court's refusal to grant plaintiff prejudgment interest because it was not requested in the complaint, noting that plaintiff "could easily have drafted a complaint that included a distinct claim for 'pre-judgment interest' in the demand clause. By operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default.").

## III. CONCLUSION

For the foregoing reasons, the Court adopts and affirms the Special Master's damages reports, including their conclusions and analysis, in all respects but one. With the exception of the alteration to the solatium award to Virginia Foley as discussed above, the Court will order that Plaintiffs be granted damage awards in the amounts specified by the Special Master. Default judgment having now been entered for Plaintiffs, this case will be dismissed. An appropriate order accompanies this Memorandum Opinion.

    /s/                       
COLLEEN KOLLAR-KOTELLY
United States District Judge
